No. 20750.

ROBERT J. BATES AND ELLEN BATES *v.* DALE H. STAGG.

(404 P.2d 530)

Decided June 28, 1965.

Victor E. Demouth, for plaintiffs in error.

McComb, Zarlengo & Mott, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

This litigation stems from a two-car collision which occurred at or about 6 o'clock p.m. on October 6, 1961, in the intersection of South Santa Fe Drive and West Mississippi Avenue in Denver.

Immediately prior to the accident, Stagg was driving a 1961 International Scout car in a northerly direction on South Santa Fe Drive, and was approaching the intersection of that street with West Mississippi Avenue. Stagg intended to make a left-hand turn at this intersection so as to thereafter proceed in a westerly direction on West Mississippi Avenue. While Stagg was thus

negotiating this left-hand turn, his vehicle was struck broadside (on the right side) by an automobile being driven in a southerly direction on South Santa Fe Drive by one Robert Bates.

Based on this occurrence, Stagg brought an action, *ex delicto,* against Robert Bates and Ellen Bates, the latter being the owner of the car which was being driven by Robert Bates, alleging that as a result of their negligence his vehicle was damaged in the amount of $1,179.75. By answer Robert Bates denied any negligence on his part and affirmatively alleged contributory negligence on the part of Stagg. Robert Bates also filed a counterclaim against Stagg in the sum of $2,500 for personal injuries allegedly suffered by him in the accident.

As already noted, Ellen Bates, who is the mother of Robert, was the owner of the vehicle which her son was driving at the time of the accident. Therefore, in her answer she asserted a counterclaim against Stagg in the sum of $776.90 for the damage to her automobile.

A trial by jury ensued. After all the evidence had been presented by both Stagg and the defendants, the trial court upon appropriate motion held that *as a matter of law* Robert Bates was guilty of negligence which was a proximate cause of the collision, and in connection therewith went on to hold that Stagg was in nowise guilty of any contributory negligence. Accordingly, at the direction of the trial court, the jury returned a verdict in favor of Stagg against both Robert and Ellen Bates in the amount of $1,179.75. In like fashion the jury returned a directed verdict against the two defendants on their individual counterclaims. By writ of error the defendants now seek reversal of the several judgments entered by the trial court upon the aforementioned directed verdicts.

The sole issue to be resolved is whether the trial court acted properly in holding as a matter of law that the collision resulted from negligence on the part of Robert Bates which was the sole and only proximate cause

thereof, and in thereafter taking the case from the jury by directing verdicts in favor of Stagg, both as to Stagg's claim and also as to the counterclaims of the two defendants.

 As was stated in *Hansen v. Dillon,* 156 Colo. 396, 400 P.2d 201, for example, the issues of negligence, contributory negligence and proximate cause are generally to be resolved by the trier of the facts, and it is only in the clearest of cases, where the facts are undisputed and reasonable minds could draw but one inference from them, that the question of just what constitutes reasonable care is ever one of law to be taken from the jury and decided by the court. Our analysis of the evidence adduced in the instant matter leads us to the definite conclusion that the record in the instant case does not meet the foregoing test and that the trial court accordingly committed error in thus taking the case from the jury. To give meaning and substance to this conclusion it becomes necessary to detail, at least briefly, the evidence adduced by the parties upon trial.

Upon trial Stagg testified that he was in the left-hand lane for northbound traffic on South Santa Fe Drive as he approached West Mississippi Avenue. This intersection was controlled by signal lights suspended on wires across the middle of the intersection and Stagg said that he entered the intersection on the green or "go" light. There was some testimony that a green arrow permitting left-hand turns sequentially preceded the green light. However, Stagg testified that at no time did he see any such green arrow, but only the green or "go" light.

Continuing then, Stagg went on to testify that he came to a virtual stop in the middle of the intersection to permit oncoming vehicular traffic, i.e., traffic going in a southerly direction on South Santa Fe Drive, to precede him through the intersection, such traffic under applicable city ordinance having a preferential right-of-way over a driver, such as Stagg, making a left-hand turn.

Stagg next testified that his traffic control light turned from green to yellow, that vehicular traffic from the north began to slow down and stop and that he then began to make his left-hand turn. The evidence was that Stagg had almost — but not quite — completed his turn when he was struck broadside (on the right-hand side) by the vehicle being driven by Bates in a southerly direction on South Santa Fe Drive. Stagg admitted that though he had looked before he began to complete his left-hand turn he did not see the Bates driven vehicle until it was only a few feet away from his car.

Bates, on the other hand, testified that as he was approaching this intersection at about 45 miles per hour, which was the speed limit on South Santa Fe Drive, the light was green for southbound traffic on South Santa Fe Drive. He said he saw the Stagg vehicle stopped in the center of the intersection, the driver thereof apparently waiting for an opportunity to make a left-hand turn. According to Bates, at or about the very moment he entered the intersection the light turned from green to yellow or amber and at or about the same time he noticed the Stagg vehicle move forward from the center of the intersection to complete the left-hand turn. Bates said he thereupon applied his brakes, but was unable to avoid striking the Stagg vehicle.

The foregoing is admittedly a synopsis of the testimony which is most favorable to the defendants' theory of the case. The fact that there was other evidence tending to show that Robert Bates was driving while under the influence of alcohol, that he was speeding, and that he in fact ran a red or stop light is of no moment in view of the present posture of the entire matter. Bates denied that he was intoxicated, or speeding, or that he ran a red light. In considering the propriety of the action of the trial court wherein it granted Stagg's motion for a directed verdict the evidence under well-established rule must be viewed in a light most favorable to the de-

fendants. See *Nettrour v. Penney Company*, 146 Colo. 150, 360 P.2d 964.

■ With reference to the driving conduct of Robert Bates, Stagg primarily contends that under the applicable ordinance it was negligence as a matter of law for Bates to *enter* the intersection on a yellow signal light. In this regard it should be kept in mind that it could be legitimately inferred from Bates' testimony that he entered the intersection at or about the very instant the signal light turned from green to yellow. As we read the applicable ordinance, the unlawful act denounced therein is the failure "to completely clear the intersection before the red alone or 'stop' signal is exhibited." Would Bates have cleared the intersection before the signal light turned to red if his progress had not been abruptly halted when he collided with the Stagg driven vehicle which was making a left-hand turn in front of him? This is a very typical controverted issue of fact which should have been resolved by the jury and not the court. In short, the testimony of Bates that he entered the intersection on a yellow light does not in and of itself establish negligence as a matter of law.

■ In like vein, just why did Stagg not see the Bates driven vehicle until only a few split seconds before the impact? Was Stagg really maintaining a reasonably sharp lookout? In view of Robert Bates' testimony that he entered the intersection just as the light turned from green to yellow, coupled with the additional fact that the Stagg vehicle necessarily traveled some 10 to 15 feet from its stopped position in the center of the intersection to the point of impact, was Stagg acting the part of a reasonably prudent person in thus negotiating his left-hand turn in front of such oncoming traffic? These illustrative questions — very much like the questions similarly posed in *Hansen v. Dillon, supra* — demonstrate that the issue of contributory negligence, as well as the issues of primary negligence and proximate cause, were in the instant case, as in the *Hansen* case, issues which

should have been resolved by the jury and not the trial court.

The factual situation in the instant case is somewhat akin to that found in *Lasnetske v. Parres,* 148 Colo. 71, 365 P.2d 250. There, as here, the collision involved a vehicle making a left-hand turn before oncoming traffic at an intersection controlled by a traffic signal light. In that case on review we held that the issues of negligence, contributory negligence and proximate cause were issues of fact — not law — and that the trial court in that case acted quite properly in declining to direct a verdict and in insisting that these issues be submitted to the jury. Such should have obtained in the instant case. Since it did not, the judgment is accordingly reversed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SUTTON concur.