No. 22045.

WILLIAM F. CARSELL AND WILLIAM F. CARSELL, JR. *v*
ROBERT LOUIS EDWARDS.
(439 P.2d 33)

Decided April 1, 1968.

TARTER AND TARTER, for plaintiffs in error.

AGEE AND FANN, FOARD, FOUTCH AND HUNT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

THIS lawsuit stems from a midday collision between two passenger cars which occurred on Pinion Lane, Manitou Springs, in December 1961. Pinion Lane is an access road to a small residential area located in hilly terrain adjacent to El Paso Boulevard, a main east-west artery between Manitou Springs and Colorado Springs. Pinion Lane, a dirt and gravel road, is approximately one hundred feet wide at its junction with El Paso Boulevard, but narrows to twelve to fifteen feet as it winds up the hill. Cedar Lane is the only other street in the area that has any bearing on this litigation. Cedar Lane forms a loop commencing at the upper end of Pinion Lane, then circling counterclockwise so as to intersect Pinion Lane some thirty to thirty-five yards above the El Paso Boulevard-Pinion Lane junction.

On the critical day Pinion Lane had some snow on it and patches of ice where previously melted snow had frozen. There is a conflict in the evidence as to the extent of the snow and whether any part of that street was "icy" at the time of the collision.

All parties to this contest lived in the community served by Pinion Lane. Mr. Edwards, plaintiff below, lived on Pinion Lane, and the Carsells, father and son, defendants below, lived on Cedar Lane just above where it rejoins Pinion Lane, at its closest point to El Paso Boulevard. Father Carsell owned the automobile driven by his son. Hereafter, when "the defendant" is mentioned, reference is being made to the son unless the context necessarily implies that it refers to both defendants.

Such other facts as are material will be developed in the context of the discussion on the alleged errors.

The court, at the conclusion of all the evidence, directed a verdict in favor of the plaintiff Edwards on the question of liability and left the question of damages for the jury. The jury returned a verdict for the plaintiff in the amount of $23,100 for personal injuries. Damage to plaintiff's car was so slight that no evidence was introduced in support of the dollar amount of the alleged damages to plaintiff's vehicle. The defendant seeks review of the trial proceedings by writ of error.

I.

The defendant assigns error in six particulars. Because of our decision that a new trial is required, it will be necessary to discuss each assignment separately. The first:

The court erred in directing a verdict against the defendant on the question of liability and directing the jury to determine the question of damages only, and further erred in failing and refusing to instruct the jury on the questions of negligence, contributory negligence, proximate cause and ordinary care.

In seeking to solve the problem presented by this assignment of error we must first look to the guidelines furnished by previous decisions of this court.

In *Swanson v. Martin,* 120 Colo. 361, 209 P.2d 917, where the trial court had directed a verdict for the defendant, we said:

"* * * [I]t is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court * * *."

The same thought was expressed in slightly different language in *Hansen v. Dillon,* 156 Colo. 396, 400 P.2d 201, wherein the court observed:

"The issues of negligence, contributory negligence and proximate cause are generally to be resolved by the trier of the facts and it is only in the clearest of cases,

where the facts are undisputed and reasonable minds can draw but one inference from them, that the question of what constitutes reasonable care is ever one of law to be taken from the jury and decided by the court * *, *.''

See also, *Kennedy v. W. T. Grant Co.*, 162 Colo. 370, 426 P.2d 185; *Bates v. Stagg*, 157 Colo. 456, 404 P.2d 530; *Lasnetske v. Parres*, 148 Colo. 71, 365 P.2d 250; *Gray v. Turner*, 142 Colo. 340, 350 P.2d 1043; *Yockey Trucking Co. v. Handy*, 128 Colo. 404, 262 P.2d 930.

█ In considering the propriety of the action of the trial court in granting plaintiff's motion for a directed verdict on the question of liability, the evidence must be viewed in the light most favorable to the defendants. *Bates v. Stagg, supra; Nettrour v. Penney Co.*, 146 Colo. 150, 360 P.2d 964.

With these principles in mind, let us now turn to the factual situation. The collision occurred on Pinion Lane while Carsell was descending and Edwards was ascending the hill. At a point some twenty yards up the hill from the junction of El Paso Boulevard and Pinion Lane, the road curves left at about a ninety degree angle and on the inside of the curve there is a rather high bank, which obscures Cedar Lane. There are ditches on both sides of the road which make the traveled portion of the road quite narrow except at the El Paso Boulevard junction.

The defendant was above the curve and, according to his testimony, "was proceeding with caution because this was actually a blind curve * * * until you're right here [indicating], and when I [he] got to that point I [he] saw Mr. Edwards coming up the road, trying to make a run for the hill to get up, because it was icy. When he saw me he [plaintiff] locked his brakes and slid."

The defendant, prior to seeing the plaintiff, had the transmission of his vehicle in "low range" and his foot riding the brake "to keep traction on the road," and his

speed was approximately ten miles an hour. Within two or three feet of the time when he saw the plaintiff, the defendant applied the brakes "hard" but, because the road was "real icy," he was unable to bring his car under complete control before sliding the length of his car into the right front end of the plaintiff's vehicle. At the time of the impact defendant estimates that he was traveling about five miles an hour. The plaintiff had come to a stop prior to the collision. The force of the impact moved the plaintiff's vehicle five or six inches, or perhaps as much as one foot.

When the plaintiff turned off of El Paso Boulevard from the west, he saw the defendant descending Pinion Lane. At that moment he had three choices. The one he took; or (2) he could have stopped at the bottom of the hill, where Pinion Lane is one hundred feet wide; or (3) he could have continued up the hill and possibly have reached a point above where the defendant's vehicle "slid" across to the plaintiff's side of the road. The jury might well have concluded that had the plaintiff taken either alternative action the accident would have been avoided; or that, in taking the action which he did take, he was negligent and that such negligence was a contributing factor to the accident.

The trial court relied on *Hogue v. Colorado and Southern Railway Company*, 110 Colo. 552, 136 P.2d 276, to support the directed verdict. It is true that the trial court directed verdicts in that case. However, the court first submitted the case to the jury and then set the verdicts aside. Finally, it directed verdicts against the plaintiffs on their claims and against the defendant on his counterclaim, notwithstanding the verdicts.

■ The *Hogue* case involved an icy street, as here, which was the main contributing factor to a collision between a truck and a train. After detailing the facts, this court observed that, "The company's agents, as well as Hogue, knew, or should have known, the condition of the streets. They were bound to take notice of the

'special danger' by reason thereof and act accordingly." This admonition is applicable in the case before us. It is applicable to both parties to the accident and not to the defendant only, as the court found. Edwards and Carsell had both traveled Pinion Lane at least one round trip that morning prior to the accident.

In affirming the trial court in *Hogue, supra,* this court concluded:

"This is simply another of that numerous class of cases where a disastrous wreck is caused by the joint negligence of all concerned and in which recovery can be had by none."

We do not determine that this case is to be controlled by the result in the *Hogue* case, but refer to the above language to point out that *Hogue* is not very convincing authority in support of the action of the trial court.

 After a careful examination of the record in this case we conclude that not only is there some conflict as to material facts, but that reasonable minds might form different opinions and draw different conclusions and inferences, even from the undisputed facts. Under such circumstances, the issues as to negligence, contributory negligence and proximate cause are for the jury.

II.

 The defendant's second assignment of error asserts:

That the court erred in refusing to strike plaintiff's testimony concerning Carsell Jr.'s concern over points and losing his license, and further erred in refusing to instruct the jury to disregard such testimony.

The alleged error arises out of the following question and answer:

"Q. * * * Now, what happened when you got up to the house to call the police?

"A. We went in and he called, and we — he said something about points, he was going to lose his license if he was charged with — ."

The defendant objected to no avail, although the court

later, with the acquiescence of plaintiff, directed the defendant to prepare a proper instruction. The defendant prepared an instruction which the court refused to give. It failed to give one of its own, also.

The answer was not only irrelevant, but was prejudicial. The admonition given in *Butters v. Dee Wann,* 147 Colo. 352, 363 P.2d 494, should suffice — "On retrial, this error should not be repeated."

### III.

The third assignment of error, in effect, states:

That the court erred in limiting defendant's right of cross-examination of plaintiff's psychiatrist, by refusing to instruct such witness not to mention insurance.

Dr. Draper, a psychiatrist, in a written report had stated that the plaintiff was suffering from traumatic hysteria and suggested that "the insurance settlement be consummated as soon as possible." He also testified that he could have been successfully treated for the "hysteria."

The following colloquy occurred on the cross-examination of Dr. Draper:

"Q. And your opinion, as you have stated, was that the prognosis would have been good and is good?

"A. If other factors in the treatment are likewise taken care of.

"Q. Are those other factors material?

"A. Yes."

Outside the presence of the jury the colloquy continued:

"MR. TARTER: If it please the Court * * *. Dr. Draper, I have a copy of his report in October, and on both occasions he recommends that the insurance claim be settled, and before I asked him the question, I wanted to know whether this was one of these other factors that you referred to.

"THE WITNESS: Yes.

"THE COURT: You'd better not ask the question, then, Mr. Tarter."

Mr. Tarter then suggested to the court that the court

instruct the witness to use the term "compensation for this loss" rather than "insurance settlement." This the court refused to do, stating that the defendant had injected it into the case and that he would have to proceed at his "own risk." Counsel for the defendant did not pursue the cross-examination further because he felt it would prejudice his client.

In approaching this problem, we are met at the outset with the rule that the right to cross-examination is fundamental in our judicial system. However, unless a restriction of cross-examination is so severe as to constitute a denial of that right, the extent to which cross-examination shall be allowed rests within the sound discretion of the trial court. See *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680; *Schwartz v. Triff*, 2 Mich. App. 379, 139 N.W.2d 907. But, even where it cannot be said that cross-examination was actually denied, the circumstances may be such as to indicate that the particular restriction in question constituted an abuse of discretion. See *Reilly v. Pinkus*, 338 U.S. 269, 70 S. Ct. 110, 94 L. Ed. 63.

The question here related directly to the subject matter of the litigation — the plaintiff's physical and mental condition as it relates to the accident. There is no question about the right of the defendant to inquire, but only as to whether, under the circumstances, he had the right to the answer in terms which were not prejudicial to his cause. Did the court abuse its discretion in refusing to instruct the witness not to use the words "insurance settlement" in his answer? We think it did. As we understand the import of the witness's testimony, the deterrent to plaintiff's recovery was his inability to effect a settlement — it was the compensation he felt he should receive and not the source of the compensation. The court should have directed the physician to delete "insurance" from his answer, unless "insurance" as the source of the funds for a settlement was the critical element of his prognosis.

## IV.

The defendant, for his fourth assignment, alleges error in that,

The court struck on its own motion testimony of defendant's neurologist without objection having been interposed by any party when such testimony was material and the striking thereof by the court served as a reprimand to the witness and discredited such witness in the minds of the jury.

The alleged error occurred during the cross-examination of the defendant's medical witness. The complained of ruling was provoked by a fairly responsive answer to counsel's question as to the opinion of the witness, as to whether one of plaintiff's medical witnesses was a "reasonable doctor." The answer was such that there is little likelihood that the question will be asked upon the retrial. In order not to extend this opinion, nothing further need be said in reference to this alleged error.

## V.

In Assignment No. 5, defendant complains:

That the court erred in denying defendant's motion to dismiss made at the conclusion of plaintiff's case. The court erred in denying defendant's motion for a directed verdict at the close of all the evidence.

What was said in reference to defendant's first assignment of error should suffice as to his fifth assignment of error.

## VI.

In Assignment No. 6, the defendant asserts:

That the court erred in refusing to instruct the jury not to consider defendant's entry onto Pinion Lane from Cedar Lane when such action, as a matter of law, neither was nor contributed to the proximate cause.

In view of the fact that the court had taken the issue of the defendant's negligence away from the jury, there was no need to be concerned with this particular matter. It had no bearing on the extent of the plaintiff's injuries.

We are sure that this is a matter that the trial court will handle properly on the retrial without any specific directions from this court.

The judgment of the trial court is reversed and the cause remanded for a new trial, in accordance with the views expressed herein.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE DAY concur.