Leonard Roy MERRITT, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 91SC597.

Supreme Court of Colorado,
En Banc.

Nov. 23, 1992.

Rehearing Denied Jan. 11, 1993.

David F. Vela, Colorado State Public Defender, David M. Furman, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Cheryl A. Linden, Asst. Atty. Gen., David Lugert, Asst. Atty. Gen., Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to determine whether, under the Confrontation Clause of the United States Constitution, the district court correctly refused to allow cross-examination of the prosecution's two essential witnesses concerning the fact that the court, at the prosecutor's request, had granted immunity to the witnesses requiring them to testify after each had asserted his Fifth Amendment right to refuse to testify. The court of appeals stated that "to allow such cross-examination would, in our view, have been proper," but it affirmed the trial court because it deemed the evidence to have been of "minimal relevance" and to have "had little probative value." We disagree with that conclusion, and, accordingly, we reverse the unpublished decision of the court of appeals and remand the case with directions ordering a new trial for the defendant.

## I.

The defendant, Leonard Merritt, was tried together with his co-defendant, Dennis Phenis. Phenis testified at trial, but Merritt did not. The following facts were established by the evidence.

On September 4, 1988, 16–year–old Brian Busto was pushed into a car at a 7–Eleven convenience store and taken to a house where he was beaten. Earlier that evening, 15–year–old Jeff Emery and 17–year–old Richard Adams had entered the 7–Eleven on their way to a birthday party to see if they could buy some beer later on that night. Busto was working as a check-out clerk at the 7–Eleven at the time.

After leaving the 7–Eleven, Emery and Adams attempted to take a large marijuana plant growing in the backyard of the house of Dennis Phenis. Emery and Adams were cornered in the yard by Phenis' dog and apprehended by Phenis and the defendant, Leonard Merritt.

When asked who told them about the marijuana plant, Adams replied, "Brian Devitt," and said that he and Emery were supposed to meet "Brian" in Columbine Park. Merritt, Phenis, and the two juveniles drove to the park, where they waited for about fifteen minutes. When no one showed up, Emery said that "Brian" must still be at work at 7–Eleven. The four then drove to the 7–Eleven and during the drive, Phenis and Merritt threatened to beat or kill the two juveniles.

At the 7–Eleven, Brian Busto was waiting for his father to pick him up after work. Phenis lured Busto out of the store by asking him to help move something out of Phenis' car. Busto agreed, but when they arrived at the car, Merritt and Phenis pushed Busto inside, with Phenis choking and punching him. Phenis then drove to a friend's house.

The evidence is in dispute at this point. Adams and Emery testified that Merritt and Phenis agreed that if Adams and Emery beat Busto, they could leave. Busto was then taken to the basement of the friend's house and beaten by Adams and Emery. Busto testified that Emery and Adams said that he should not have set them up. Busto testified that Merritt was somewhere in the basement during the beating.

Phenis testified that after he drove to the friend's house, Adams and Emery requested·to speak with Busto in private. Phenis testified that while Adams and Emery were talking to Busto, a fight broke out in which Busto was beaten. Phenis denied telling Adams and Emery to beat Busto. Merritt's statements to a police investigator, Detective Russell Boatright, are in accord with Phenis' testimony.

After the beating, the five drove back to Columbine Park, where Busto was released. He walked back to the 7–Eleven, and a co-worker called the police and Busto's parents.

Merritt was arrested and charged by information in the Jefferson County Court on October 27, 1988, with second degree kidnapping,[1] menacing,[2] and third degree assault,[3] along with Phenis. A joint trial was commenced on June 13, 1989, and concluded on June 16, 1989, with the jury finding Merritt and Phenis guilty as charged. Merritt was sentenced to a term of three years in the Department of Corrections for the kidnapping conviction, two years for the menacing conviction, and one year for the assault conviction, the sentences to run concurrently.

At trial, Adams and Emery testified against Merritt. Both juveniles had been charged in juvenile court for their roles in the events for which Merritt was charged. Both juveniles refused to testify, and asserted their Fifth Amendment right against self-incrimination outside of the hearing of the jury. Pursuant to § 13–90–118, 6A C.R.S. (1987), the prosecutor requested that the court grant the two juveniles "use immunity" for their testimony against Merritt.[4] The request was granted.

1. § 18–3–302, 8B C.R.S. (1986 & 1992 Supp.).

2. § 18–3–206, 8B C.R.S. (1986).

3. § 18–3–204, 8B C.R.S. (1986).

4. Section 13–90–118, 6A C.R.S. (1987) provides:
 (1) Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to a court or grand jury of the state of Colorado involving any laws of the state and the person presiding over the proceeding communicates to the witness an order as specified in subsection (2) of this section, the witness may not refuse to comply with the order on the basis of his

The court ordered that defense counsel could cross-examine the juveniles on the basis of their present pending juvenile charges but not as to the issue of the grant of immunity. The prosecutor was permitted to question the two juveniles as to whether any "deals" had been offered by the prosecution in return for their testimony. In response to these questions, both Adams and Emery answered that they had not.[5] In addition, the following colloquy occurred while Adams was being cross-examined by Phenis' counsel:

Q: Is it true that you're telling the jury that you don't believe you're going to get anything from your cooperation regarding your pending case?

A: I really don't understand what you're asking me.

Q: You don't think, for testifying, they might do something for you later after the trial is over?

A: I'm not for sure.

Emery was not similarly cross-examined.

The court of appeals, in an unpublished decision, affirmed Merritt's conviction.

*People v. Merritt,* No. 89CA1508 (Colo. App. Aug. 15, 1991). The court of appeals held that allowing cross-examination on a grant of use immunity would have been proper. However, that court believed that because such questioning was of "minimal relevance" to show bias or motive for testifying, and had little probative value, any error in refusing to allow such cross-examination was de minimis and therefore not grounds for reversal. We conclude that the court of appeals misapplied the test to determine whether there was a Confrontation Clause error here. Under the proper test, there was error, and the error was not harmless beyond a reasonable doubt. Accordingly, the defendant's convictions must be reversed and remanded for a new trial.

## II.

 The first issue before the court is the determination of the proper standard of review in the instant case. The right of a criminal defendant to confront the witnesses against him or her is guaranteed by the United States Constitution.[6] Such confrontation is not satisfied simply by having the

privilege against self-incrimination; except that no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury or false statement or otherwise failing to comply with the order.

(2) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court or grand jury of the state of Colorado, the district court for the judicial district in which the proceeding is or may be held may issue, upon request of any district attorney, attorney general, or special prosecutor of the state of Colorado, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in subsection (1) of this section.

(3) A district attorney, attorney general, or special prosecutor of the state of Colorado may request an order as specified in subsection (2) of this section when in his judgment the testimony or other information from such individual may be necessary to the public interest and such individual has refused or is likely to refuse to testify or provide other

information on the basis of his privilege against self-incrimination.

The effect of the statute is to give the witness "use" immunity. That is, neither the compelled testimony, nor any evidence derived from that testimony may be used against the immunized witness in a subsequent criminal proceeding. *People v. Lederer,* 717 P.2d 1017, 1018 (Colo. App.1986).

5. The prosecution's questioning of the two witnesses in this regard is as follows:

Adams:

Q: At no time did anybody from the district attorney's office or law enforcement ever offer you any kind of deal to testify?

A: No.

Emery:

Q: You were arrested, were you not?

A: Yes, I was.

Q: As a matter of fact, those charges are still pending, are they not?

A: Yes, they are.

Q: No one has offered you anything for your testimony here today, is that not true?

A: That's true.

6. The Sixth Amendment to the United States Constitution provides, in relevant part:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

witnesses physically present in court, but requires that the defendant be given an opportunity for effective cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *People v. Thurman*, 787 P.2d 646, 651 (Colo.1990). Such an opportunity for effective cross-examination, however, does not mean unlimited cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431–1435, 89 L.Ed.2d 674 (1986); *People v. Cole*, 654 P.2d 830, 833 (Colo. 1982). *See also Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (*opportunity* for effective cross-examination does not mean that cross-examination must actually be effective). The scope and duration of cross-examination is under the control of the trial court subject to well-established rules. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435.

▮▮ Generally, unless excludable by some statute or rule of evidence, all relevant evidence should be admitted. C.R.E. 402. Relevant evidence should be excluded only if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. C.R.E. 403. The credibility of a witness may be attacked by any party, and the court may limit witness examination if necessary to assist the truth-finding process; to avoid wasting time; and to protect witnesses from harassment, undue embarrassment, or danger to his or her personal safety. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *Smith v. Illinois*, 390 U.S. 129, 133–34, 88 S.Ct. 748, 751, 19 L.Ed.2d 956 (1968) (White, J., concurring); *Thurman*, 787 P.2d at 652; C.R.E. 607, 611. *See also Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435.

▮▮ Thus, a trial court has wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation which is repetitive or only marginally relevant. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435. On the other hand, the United States Supreme Court has stated:

> We think a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1435 (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111). *Accord People v. King*, 179 Colo. 94, 98, 498 P.2d 1142, 1144–45 (1972) ("[A] trial court should allow broad cross-examination of a prosecution witness with respect to the witness' motive for testifying, especially where such witness is charged with or threatened with criminal prosecution ..., and where his testimony against the defendant might be influenced by a promise of, or a hope or expectation of, immunity or leniency with respect to the pending charges against him, as a consideration for testifying against the defendant."). The focus in terms of constitutional error analysis is not the effect of the alleged error on the outcome of trial, but on the individual witness.[7] *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1435. While an abuse of discretion standard ordinarily applies to limits placed on a defendant's cross-examination, this standard only applies if there is no infringement on the defendant's rights secured by the Confrontation Clause. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (A court has wide latitude to limit cross-examination, but "[b]y thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive

---

7. Even if we find constitutional error in this case, we must still determine whether that error requires reversal, that is, whether the error was not harmless beyond a reasonable doubt.

for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."); *see also People v. Raffaelli,* 647 P.2d 230, 234 (Colo.1982) (*"Unless* the restriction of cross-examination is so severe as to constitute a denial of that right, the extent to which the cross-examination should be allowed rests within the trial court's discretion.") (emphasis added).

■ The test, then, can be summarized as follows. While a trial court does have discretion to limit cross-examination, it is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or motive for testifying. With this test in mind, we turn to the defendant's argument.

### III.

■ Merritt claims, simply, that the trial court did not permit him an opportunity to cross-examine effectively Adams and Emery and to impeach their credibility when it denied cross-examination with regard to their receipt of use immunity.[8] Such a denial in this case, asserts Merritt, is constitutional error. We agree.

Merritt desired to cross-examine Adams and Emery to bring out the fact that they had received use immunity for their testimony. According to Merritt, without such evidence, it appeared to the jury that the two were testifying voluntarily and freely implicating themselves, under oath, in criminal activity. This reasonable, but false, inference could serve to bolster Adams' and Emery's credibility in the eyes of the jury. By prohibiting such questioning, the trial court did not permit Merritt to counter this reasonable, but false, inference.

We agree with Merritt that the trial court's ruling limiting cross-examination of Adams and Emery prevented Merritt from eliciting testimony that would show "bias" according to *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984), that is, a "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." More importantly, the trial court's ruling prevented Merritt from countering a number of reasonable, but false, inferences raised by Adams' and Emery's testimony, and the circumstances surrounding that testimony, which bore on those two witnesses' credibility.[9]

First, the two juveniles appeared to confess under oath. Such apparent confessions under oath raised a false inference that Adams and Emery were making statements against their penal interest, statements which historically have been thought to have such indicia of trustworthiness that

---

**8.** With regard to the existence of a Confrontation Clause error (though not with regard to whether the error is reversible), it is sufficient to show such error with regard to either one of the juvenile witnesses. *See People v. Bowman,* 669 P.2d 1369, 1376 (Colo.1983) (holding that confrontation error with respect to cross-examination of one juvenile witness made it unnecessary to consider whether cross-examination of second juvenile witness was improperly circumscribed by trial court). However, the issues are the same with regard to both witnesses; much of one's testimony is corroborative only of the other's. In context, we choose to analyze their testimony together.

**9.** The trial court and the court of appeals concluded, and the People argue, that, in addition to being only marginally relevant (a conclusion to which we do not adhere), the denied cross-examination would confuse the issues and would waste time, thus requiring lengthy clarifying instructions to the jury, and should be excludable within the trial court's discretion. C.R.E. 403.

While we find the relevance, at least in the instant case, of the excluded cross-examination is sufficient to overcome a C.R.E. 403 hurdle to admissibility, we also believe that a precautionary instruction would not be difficult to formulate. The court need only derive an instruction from the immunity statute. That is, the jury need only be instructed: that the witness has asserted his or her privilege against self-incrimination; that, in the judgment of the district attorney, the testimony of the witness is necessary to the public interest; that the court has issued an order to the witness compelling him or her to testify; and that, pursuant to statute, and the court's order, the witness' testimony, or any information directly or indirectly derived from such testimony, may not be used against the witness in any criminal case, except a prosecution for perjury or false statement, or contempt of court. § 13–90–118, 6A C.R.S. (1987).

the statements are admitted as an exception to the hearsay rule. *See* C.R.E. 804(b)(3). "A confession, if freely and voluntarily made, is evidence of the most satisfactory character. Such a confession ... 'is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers.'" *Hopt v. Utah*, 110 U.S. 574, 584, 4 S.Ct. 202, 207, 28 L.Ed. 262 (1883) (quoting *King v. Warickshall*, 1 Leach 263, 263, 168 Eng. Rep. 234, 235 (1783)). If the jury had known that Adams and Emery were testifying under compulsion, after asserting their privilege against self-incrimination and receiving use immunity, it may have reasonably regarded the testimony with much more suspicion.

Second, the jury was informed that the juveniles were testifying while charges were pending against them. This raised a false inference that they were owning up to their responsibility for what they did and that their testimony could be used against them in future juvenile proceedings. Instead, they knew, but the jury did not, that the only risk they faced by testifying was a possible perjury prosecution. The jury, had it had this information, may have reasonably inferred that the charges were being held over Adams and Emery to make sure they cooperated with the prosecution.

Third, the juveniles testified that they were neither offered nor given any "deals" to testify.[10] This testimony raises a false inference that Adams and Emery were testifying freely and had no ulterior motives. Actually, they knew that their testimony could not be used against them at their pending juvenile proceedings and that the prosecutor in Merritt's case would give a "good word" to the juvenile prosecutor if they cooperated.[11] The prosecutor stated

on the record, outside the hearing of the jury, that Adams and Emery were essential witnesses. Although no formal plea bargains had been made in exchange for the juveniles' testimony, the prosecutor requested the court to grant immunity to the juveniles, and without such grants of immunity, the witnesses would not have testified, probably crippling the People's case. Because of the limits placed on cross-examination, the jury did not know that the juveniles had some interest in testifying in a way to put the People's case in the best light.

Because Merritt was not given an opportunity to cross-examine effectively Adams and Emery in order to combat the reasonable, but false, inferences arising from the juveniles' testimony, Merritt was denied his right to confront the witnesses against him. U.S. Const. amend. VI. Therefore, the trial court committed constitutional error by limiting Merritt's cross-examination of Adams and Emery.

## IV.

■ Merritt does not argue that the finding of a constitutional error ends our inquiry. Many constitutional errors do not require reversal if the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We have stated that this doctrine, "which excuses as harmless errors of constitutional dimension, is to be sparingly applied." *People v. Myrick*, 638 P.2d 34, 38 (Colo.1981). The United States Supreme Court has applied constitutional harmless error analysis to Sixth Amendment confrontation cases, *Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, and apparently considers such an error to be a "trial" error, rather than a "structural defect af-

---

**10.** While testimony regarding this could have, and did get into evidence, the court's ruling prohibiting questioning regarding use immunity prevented a full exploration of the juvenile witnesses' motives for testifying and the possible connections between the use immunity, their interest in the outcome of Merritt's trial, and the charges pending against them. *See Bowman*, 669 P.2d at 1376.

**11.** During a motions hearing before the commencement of trial, the prosecutor stated that he had spoken with Adams' attorney, who said that Adams would assert his Fifth Amendment privilege. The prosecutor told him that he would offer no plea bargain or other deal, but that he would tell the prosecuting attorney handling Adams case that he had cooperated in Merritt's and Phenis' case.

fecting the framework within which the trial proceeds," which would necessitate automatic reversal under the Federal Constitution.[12] *See Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302, (1991).

To uphold Merritt's conviction, this court must be able to declare that the trial court's denial of Merritt's right to confront Adams and Emery was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828; *Graham v. People,* 705 P.2d 505, 509 (Colo.1985). In so doing, we must determine whether the prosecution has met its burden of demonstrating that the trial court's limitations on Merritt's cross-examination of the juveniles did not contribute to Merritt's conviction. *Fulminante,* —— U.S. at ——, 111 S.Ct. at 1257; *see also Topping v. People,* 793 P.2d 1168, 1172 (Colo.1990). We conclude that the People cannot demonstrate this on the record.

▇ The inquiry here is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. An appellate court should examine a number of factors, including the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.* *See also Myrick,* 638 P.2d at 38 ("A constitutional error is harmless only when the case against a defendant is so overwhelming that the constitutional violation was harmless beyond a reasonable doubt.").

▇ A review of the record demonstrates how important the testimony of the two juveniles was to the People's case. Brian Busto was able to testify only that he was forced into a car by Merritt and Phenis. Busto testified that Merritt did not make any threats toward him. He did not testify to much detail about what happened at the scene of the assault, such as where Merritt or Phenis were located. His only memory of the assault itself was that he was hit four times before losing consciousness and that unknown persons kicked him several times while he was lying unconscious on the ground. Most notably, Busto did not testify that either Merritt or Phenis in any way encouraged Adams or Emery to assault him.

Without the testimony of Adams and Emery, the defense's explanation appears as likely as the prosecution's theory of the case. Merritt's version of the facts as told to Detective Boatright and corroborated by Phenis' trial testimony was that Adams and Emery assaulted Busto without provocation from Merritt or Phenis because Busto set them up. Assuming the damaging potential of the denied cross-examination were realized, *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, and the jury were to disbelieve the testimony of the two juveniles as being coerced or self-serving (rather than being voluntary and confessional), the verdicts could not stand.

The People argue that the jury received sufficient facts for them to make a discriminating appraisal of the witnesses' credibility. Testimony showed that Adams and Emery had prior criminal histories, that Adams had been adjudicated a juvenile delinquent in a separate case, that Adams and Emery were involved in the crime and arrested for it, and were currently charged with kidnapping and assault by the same prosecutor's office. In addition, the juveniles were impeached, or could have been impeached, regarding their guilty behavior,

---

12. The parties agree that, if we conclude that the trial court's ruling is a Confrontation Clause error, the proper standard of review is whether the error is harmless beyond a reasonable doubt. The People have not extensively briefed their argument that the error was harmless beyond a reasonable doubt, and at oral argument, the People apparently conceded that the trial court's error, if it was constitutional error, was not harmless beyond a reasonable doubt. As discussed in the text, we agree.

prior inconsistent statements, and memories and perceptions of the events of that day.[13] With such a "big picture" of these witnesses, the People argue, the jury had enough evidence to assess their credibility.

Such an argument misses the point, however. The evidence which the People claim constitutes this "big picture" of the witnesses only applies to the witnesses' *general* credibility (similar to a reputation for trustworthiness in the community). In contrast, the areas of cross-examination prohibited by the trial court are relevant to show specifically the witnesses' bias or motive to lie or dissemble about their participation in the kidnapping and assault of Brian Busto, that is, about the facts in this case.

Therefore, we cannot find that the trial court's confrontation error was harmless beyond a reasonable doubt.

### V.

In summary, we find that the trial court denied Merritt his right to confront Adams and Emery and to cross-examine them in order to elicit answers which would combat false inferences of credibility raised by the prosecution's examination and by the circumstances of their testimony. Because the trial court's error was not harmless beyond a reasonable doubt, the judgment is reversed and the case remanded to the court of appeals with directions to return the case to the trial court for a new trial.

ERICKSON, J., dissents.

VOLLACK, J., dissents, and ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice ERICKSON dissenting:

I agree with the dissent of Justice Vollack, but write separately to emphasize my view that the trial court did not err. All

limitations on cross-examination do not constitute a violation of a defendant's constitutional right to confront witnesses testifying against him and are not always reversible error. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976).

It is the function of the trial judge to channel the admission of evidence in a criminal case so as to prevent prejudice to both the prosecution and the defense. Standard 6–2.3 of the American Bar Association Standards for Criminal Justice provides: "The trial judge should permit reasonable latitude to counsel in the examination and cross-examination of witnesses, but should not permit unreasonable repetition or permit counsel to pursue clearly irrelevant lines of inquiry." Standards for Criminal Justice § 6–2.3 (2d ed. 1986 Supp.).

Reversible error would have occurred if the prosecution or defense called either Adams or Emery as a witness to force them to invoke their right against self-incrimination. *DeGesualdo v. People*, 147 Colo. 426, 364 P.2d 374 (1961). Here, the district attorney, after being advised that Adams and Emery would invoke their right against self-incrimination if called as witnesses by the prosecution, sought and obtained use immunity for both Adams and Emery. Adams and Emery were not consulted or advised that the prosecution would seek to compel them both to testify against Merritt. The trial court, in its sound discretion, granted defense counsel wide latitude in the cross-examination of both witnesses, including questions directed at pending charges and their past juvenile records. Cross-examination by defense counsel established that both witnesses had lied in the past and were presently facing charges for the same criminal episode that caused the charges to be filed

---

**13.** The People also argue that the jury knew, or could have learned, that Adams and Emery had an opportunity to curry favor from or hope for leniency from the state in their own prosecutions, and that there was an offer to communicate their cooperation to the juvenile prosecutors. We, however, do not see any support for such assertions on the record. In fact, when questioned by Phenis' attorney whether he knew about an offer to communicate his cooperation to the juvenile prosecutor, Adams first claimed that he did not understand the question, and then that he did not know.

against Merritt. Adams and Emery admitted that the prosecution had made no promises or concessions to obtain their testimony. Both juveniles had the option of testifying or being held in contempt of court if they refused to testify.

Cross-examination on the granting of use immunity was not relevant and was properly limited by the trial judge in his sound discretion. *People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976). If the trial judge permitted defense counsel to inquire about the granting of use immunity, the jury would have been exposed to collateral issues that were not germane to the issues of bias or credibility. *People v. Rubanowitz,* 688 P.2d 231, 243 (Colo.1984); *People v. Walker,* 666 P.2d 113, 122–23 (Colo.1983).

In *People v. Walker,* 666 P.2d 113 (Colo. 1983), we said:

> Cross-examination by questions which focus on the motive of a witness is liberally permitted. *People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976). The scope of the cross-examination permitted enabled [sic] defense counsel to explore the officer's self-interest, motive, and bias as factors which affected his credibility. The ruling of the trial court properly prevented the sideshow from taking over the circus. *See People v. Taylor,* 190 Colo. at 213, 545 P.2d 703. The scope and limits of cross-examination for impeachment and general credibility are within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Crawford,* 191 Colo. 504, 553 P.2d 827 (1976); *People v. Cushon,* 189 Colo. 230, 539 P.2d 1246 (1975); *People v. Evans,* 630 P.2d 94 (Colo.App.1981). The trial court did not abuse its discretion in this case.

*Id.* at 122–23.

I do not identify the issue in this case as being of federal constitutional dimension and disagree with the majority's analysis of the issue under the harmless error standard set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See United States v. Atwell,* 766 F.2d 416, 420 (10th Cir.) (finding no abuse of discretion in limiting cross-examination

under CRE 403 to avoid confusion of the jury), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985); *United States v. Nunez,* 668 F.2d 1116, 1122–23 (10th Cir.1981) (finding the denial of the admission of acts which might infer bias will not constitute a confrontation violation when sufficient evidence is before the jury to permit a discriminating appraisal of the witnesses' credibility).

Accordingly, I dissent and join Justice VOLLACK in his dissent.

Justice VOLLACK dissenting:

The majority finds that the trial court committed "confrontation error" which requires reversal of the defendant's, Leonard Merritt's (Merritt), conviction. Maj. op. at 170. I disagree. We granted certiorari to determine two issues: whether the standard of review in Confrontation Clause cases is harmless error, and "[w]hether the trial court abused its discretion by refusing to allow cross-examination of the prosecution's two essential witnesses on their being granted [use] immunity to testify." Because the scope of cross-examination lies within the trial court's sound discretion, this case is appropriately reviewed under an abuse of discretion standard. A careful review of the record reveals that the trial court did not abuse its discretion in this case. Since we are called on to evaluate the trial court's exercise of discretion in this case, we need not determine what standard of error analysis applies to Confrontation Clause arguments. Were I to adopt the majority's reasoning, however, I conclude that the trial court's error, if any, was harmless beyond a reasonable doubt.

I.

We are required to determine whether the trial court's decision to exclude use immunity from the scope of cross-examination amounts to an abuse of discretion in this case. Witness use immunity is governed by section 13–90–118, 6A C.R.S. (1987), which provides that, whenever a witness refuses to testify in a proceeding on the basis of the privilege against self-incrimination, the court may compel the

witness to testify. § 13–90–118(1), 6A C.R.S. (1987). The witness may not refuse to comply with the order. However, no testimony compelled under the order may be used against that witness in any criminal case.[1] *Id.* Evaluating whether the trial court abused its discretion by excluding the grant of use immunity from cross-examination requires an examination of the record of the trial court's rulings.

As a result of events occurring on September 4, 1988, Richard Adams (Adams), Jeffrey Emery (Emery), Dennis Phenis (Phenis), and Merritt were charged with various offenses. Adams and Emery were charged in juvenile court. Phenis and Merritt were charged as codefendants in district court. Prior to Phenis' and Merritt's trial, the People of the State of Colorado (the People) endorsed twenty-nine witnesses, including Adams and Emery.

On April 21, 1989, the trial court held a motions hearing wherein counsel for Merritt presented a motion for disclosure of impeaching information. Counsel for Merritt informed the court that "Adams had two bike thefts, criminal mischief, a theft, [and] two assault cases." Counsel for Merritt sought to discover the dispositions of the various charges, and the disposition of any prior charges against both Adams and Emery. Counsel for Merritt argued that the status of the pending charges against Adams and Emery would be relevant to show possible bias on their parts. The trial court granted the defendant's motion for disclosure of impeaching information.

On June 13, 1989 (the date set for trial), the People informed the court that Adams and Emery would assert Fifth Amendment rights when called to testify and asked the court to give both Adams and Emery use immunity under section 13–90–118.[2] The trial court asked the People if they intended to drop the charges against Adams and Emery. The People responded in the nega-

tive. Counsel for Merritt argued that the People's request should be denied because it was an "eleventh hour filing."

The People also requested that the trial court issue an order preventing the defendants from introducing the fact of the pending charges against Adams and Emery. Counsel for Merritt argued that the fact of the pending charges goes directly to Adams' and Emery's motive or bias in testifying in the present case. Counsel for Merritt argued that Adams and Emery "have a definitive interest when they take the stand to tell one version of the story because they are going to—because they are being prosecuted in another case." The trial court agreed that "there is a definitive motive here." The trial court concluded that, if it elected to grant the witnesses use immunity, then, in the interest of fairness, it would allow defense counsel to inquire as to the charges pending against both Adams and Emery in their juvenile cases.

After the trial court's ruling, counsel for Phenis asked the trial court whether Adams and Emery could be cross-examined on the grant of use immunity. The trial court again ruled that cross-examination on the existing juvenile proceedings reflected the credibility of the witnesses. The trial court stated that "[t]he issue of the [Fifth] [A]mendment right and their assertion and the [use] immunity that may be granted by the Court is a legal issue that is not a matter of province of the jury." The trial court ruled that Adams and Emery could be cross-examined on their pending juvenile charges, but not on the grant of use immunity.

During trial, counsel for Merritt again argued to the trial court that the scope of cross-examination should include the grant of use immunity. The trial court again ruled that counsel for Merritt could ask Adams and Emery whether there were any

---

**1.** Testimony compelled under § 13–90–118, 6A C.R.S. (1987), may be used against witnesses only in prosecutions for perjury or false statements.

**2.** On June 13, the People filed a request for an order to compel the testimony of Adams, on the

ground that Adams would exercise his right against self-incrimination and refuse to testify. On the same day that the People's motion was filed, the trial court issued an order pursuant to § 13–90–118 granting Adams use immunity.

charges pending against them stemming from the present case, but questions as to the grant of use immunity could not be asked.

On direct examination, Adams testified that he had been declared a juvenile delinquent. He testified that he had been in some trouble with the law and had just been sentenced to serve two years in the Department of Institutions. Adams testified that he hit Busto up to ten times, and that neither Phenis nor Merritt struck Busto.

On cross-examination, counsel for Phenis asked Adams whether he thought the People would do something for him in exchange for his testimony. Adams responded that he was not sure. Adams testified that he was presently in custody for another case, and had to complete a two-year sentence. Adams testified that he lied when he stated that Brian "Devitt" set him up to get the marijuana plant. Adams also agreed that he tells people what he thinks they want to hear. Adams testified that he lied in a statement he gave to Investigator Boatright. Counsel for Merritt asked Adams on what charge he had received the two-year sentence. Adams responded that he was not sure, and the People objected to the question. The trial court sustained the People's objection, and counsel for Merritt said nothing further.

The People called Emery, who testified that he was arrested as a result of the events and that the charges against him were still pending. Emery also testified that he had not been offered anything for his testimony. On cross-examination, Emery admitted telling lies to two investigating officers in this case. Emery testified that he never asked Busto to go outside and smoke marijuana. Emery admitted that he knew that Busto was innocent when he informed Phenis and Merritt in the station wagon that "Brian" must still be at work at the 7–11 store.

At the conclusion of the trial, the jury returned a verdict finding Merritt guilty of second degree kidnapping, menacing with a deadly weapon, and third degree assault. Merritt appealed his convictions, and, in an unpublished opinion, the court of appeals affirmed.

## II.

The majority concludes that the trial court committed reversible error in this case because Merritt was not allowed to "cross-examine fully" Adams and Emery. Application of the abuse of discretion standard reveals that the trial court's ruling excluding the grant of use immunity from the scope of cross-examination does not amount to a clear abuse of discretion in this case. Rather than apply an abuse of discretion standard, however, the majority evaluates whether harmless error governs the instant case. Maj. op. at 165–67. The majority subsequently applies a harmless error test and concludes that the trial court's "confrontation error" is not harmless. Maj. op. at 167–70. I disagree. Under harmless error analysis, I find that the error, if any, in this case is harmless beyond a reasonable doubt.

## A.

The United States Constitution, as the majority notes, guarantees defendants a right to *effective cross-examination*.[3] Maj. op. at 166 (relying on *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *People v. Thurman*, 787 P.2d 646, 651 (Colo.1990)). Defendants are not, as the majority also notes, entitled to unlimited cross-examination or to cross-examination that is actually effective. Maj. op. at 166; *see People v. Cole*, 654 P.2d 830, 833 (Colo.1982) ("[A]n accused's right to confront and to cross-examine witnesses is not absolute and may be limited 'to accommodate other legitimate interests in the criminal trial process.'").

3. The Colorado Constitution also guarantees accuseds the right to be confronted with the witnesses against them, which includes the right of cross-examination. *People v. Thurman*, 787 P.2d 646, 651 (Colo.1990). However, I limit my discussion to the United States Constitution as the majority bases its analysis on the right secured thereunder. *See* maj. op. at 165–66.

Accordingly, this court has stated that " '[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.' " *Thurman*, 787 P.2d at 652 (quoting *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931)); *Kogan v. People*, 756 P.2d 945, 960 (Colo. 1988) ("Since the constitutional right of confrontation necessarily depends upon the particular circumstances of a particular criminal proceeding, we have stated that such determination is committed to the sound discretion of the trial court."); *People v. Rubanowitz*, 688 P.2d 231, 243 (Colo. 1984); *People v. Raffaelli*, 647 P.2d 230 (Colo.1982). "A reviewing court called upon to address a matter within the sound discretion of the trial court will not reverse the trial court's ruling unless it constitutes a clear abuse of discretion." *Thurman*, 787 P.2d at 655 (relying on *People v. District Court*, 664 P.2d 247, 252 (Colo.1983)). "Unless the restriction of cross-examination is so severe as to constitute [a] denial of that right, the extent to which the cross-examination should be allowed rests within the trial court's discretion." *Raffaelli*, 647 P.2d at 234 (relying on *Carsell v. Edwards*, 165 Colo. 335, 439 P.2d 33 (1968)); *see People v. Loscutoff*, 661 P.2d 274, 277 (Colo.1983) (quoting *Raffaelli*, 647 P.2d at 234); *see also People v. Schwartz*, 678 P.2d 1000, 1009 (Colo.1984) (relying on *People v. Bowman*, 669 P.2d 1369 (Colo.1983), in emphasizing the trial court's broad discretion to rule on cross-examination matters).

In *Thurman, Kogan, Rubanowitz, Raffaelli*, and *Loscutoff*, this court evaluated whether particular trial court rulings regarding the scope of cross-examination constituted a clear abuse of discretion. *Thurman*, 787 P.2d at 645–55; *Kogan*, 756 P.2d at 960–61; *Rubanowitz*, 688 P.2d at 243–44; *Raffaelli*, 647 P.2d at 234; *Loscutoff*, 661 P.2d at 274. We have noted that rulings that exclude from the scope of cross-examination testimony which would be inadmissible or immaterial do not constitute an abuse of discretion. *Rubanowitz*, 688 P.2d at 243. In *Kogan*, for example, we noted that "[d]angers exist in too readily admitting extrinsic evidence relating to

bias." *Kogan*, 756 P.2d at 960. We therein concluded that, "[s]ince the constitutional right of confrontation necessarily depends upon the particular circumstances of a particular criminal proceeding, we have stated that such determination is committed to the sound discretion of the trial court." *Id.* Applying an abuse of discretion standard, we concluded in *Rubanowitz* that a trial court did not abuse its discretion by ruling that a defendant could not question a witness, who had been granted use immunity, about possible penalties for charges which could have been filed against that witness. *Rubanowitz*, 688 P.2d at 243–44.

The majority finds the trial court's ruling prevented Merritt from eliciting testimony that would show bias. The majority bases this finding on the fact that "the trial court did not permit Merritt to counter" a number of reasonable, but false, inferences raised by Adams' and Emery's testimony, and the circumstances surrounding that testimony, which bore on those two witnesses' credibility. Maj. op. at 167. Drawing inferences, however, is not warranted in a case such as the present where we are called upon to ascertain whether the trial court clearly abused its discretion.

In the present case, counsel for Merritt argued that the existence of pending charges against Adams and Emery went directly to the issue of bias. The trial court ruled prior to trial that Adams and Emery could be cross-examined as to any pending charges stemming from the events at issue. Counsel for Merritt successfully argued a motion for disclosure of impeaching information with respect to Adams and Emery, and was permitted to discover their prior criminal histories.

During trial, both Adams and Emery admitted to telling lies about the facts in this case. Adams testified that he was presently in custody and was serving a two-year sentence. Counsel for Merritt could have but did not direct queries to Adams regarding his prior charges. The trial court excluded queries directed toward the grant of use immunity, finding that cross-examination regarding existing juvenile proceed-

ings would reflect the credibility of the witness. In so ruling, the trial court was apprised of the fact that exercise of Fifth Amendment rights and grants of use immunity are not matters that come within the province of the jury.

Under these facts, counsel for Merritt had an adequate opportunity to effectively impugn the credibility of Adams and Emery, and to establish their bias. By ruling that Merritt was only prohibited from directing queries on the grant of use immunity, the trial court did not so severely restrict Merritt's constitutional right of confrontation as to constitute a denial of that right. *See Raffaelli,* 647 P.2d at 234; *Loscutoff,* 661 P.2d at 277. I do not find that the trial court's ruling amounts to a clear abuse of discretion in this case.

### B.

The majority concludes that the trial court committed "confrontation error" which was not harmless beyond a reasonable doubt. Maj. op. at 170. I disagree. In its harmless error analysis, the majority contends that the People "miss[ ] the point" by arguing that the jury had enough evidence to assess the credibility of the witnesses. Maj. op. at 170. Conversely, the majority finds that, "[w]ithout the testimony of Adams and Emery," the defense and prosecution theories are equally "likely." Maj. op. at 169. The majority's analysis does not focus on the fact that only one specific point—the grant of use immunity—was excluded from the scope of cross-examination. Thus, we need not evaluate what the outcome of trial would have been in the *complete absence* of the boys' testimony; we must only consider whether the outcome of the trial was affected by the exclusion of the grant of use immunity from the scope of cross-examination.

Under harmless error analysis, appellate courts "must examine the facts of the case to determine whether the error affected the outcome of the trial." *Topping v. People,* 793 P.2d 1168, 1172 (Colo.1990). Such analysis requires this court to examine the record on appeal. We are not required to speculate or draw inferences. The record

reveals that counsel for Merritt argued that the fact of pending charges against Adams and Emery went directly to their bias. The trial court agreed, and permitted inquiry into the pending charges on cross-examination. The trial court also permitted Merritt to discover Adams' and Emery's prior juvenile records. The trial court found that inquiry into the grant of use immunity would impermissibly bring Fifth Amendment concerns before the jury. Under the facts of this case, I conclude that the trial court's ruling did not affect the outcome of this case.

I cannot agree with the majority that the trial court's ruling denying Merritt the opportunity to direct questions to the grant of use immunity denied Merritt his right to effective cross-examination on these facts. I dissent and would affirm the defendant's convictions.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.