Opinion by
Mr. Justice Groves.
This action involves a rear-end collision. The parties will be referred to by name or as they appeared in the trial court where the defendants in error were plaintiffs and the plaintiffs in error were defendants. The plaintiff Rea was driving a tractor-trailer belonging to the plaintiff McKee. Judgment was entered on a verdict awarding Rea $3,550 for personal injuries and McKee $14,000 for property damage. Among the errors assigned by the defendants was the failure of the trial court to find that Rea was guilty of contributory negligence as a matter of law and to direct a verdict in favor of the defendants. We hold that the defendants are correct in this position.
The accident occurred on September 17, 1964 at 6:55 p.m. on U.S. Highway 285 about ten miles east of Fairplay. Both the defendant Sellner and plaintiff Rea were driving their vehicles toward Fairplay. Rea testified that it was starting to get fairly dark. Ahead of Rea, Sellner was driving a tractor attached to a “lowboy” trailer on which there was a larger yellow “back hoe.” There was evidence that he had not turned on his *215 lights. There was testimony that the lowboy had two taillights, each three and one-half inches in diameter, which were reflectorized and clean; and this evidence was undisputed. Immediately prior to the collision Sellner was driving six or seven miles per hour.
The plaintiff Rea was driving a tractor-trailer outfit with the trailer empty, and was traveling at a speed of about fifty-five miles per hour. He proceeded down a slight grade at the bottom of which there was a bridge. He crossed the bridge and drove upgrade a distance of about 500 feet, running into the rear of the lowboy without having applied his brakes or swerving.
The upgrade, which Sellner and Rea were ascending prior to and at the time of the collision, was an even grade — there were no humps or depressions in the roadway which would obstruct or impede vision from the bridge to the point of impact. When approaching and crossing the bridge Rea had his headlights on low beam by reason of a vehicle coming toward him from the opposite direction. The following is from a transcript of Rea’s testimony.
“Q. And you had your lights on dim?
A. Yes, sir.
Q. And then what happened right prior to the accident?
A. Well, I flipped my lights up on bright just as I started up this hill and here this lowboy was directly ahead of me. I didn’t have time to do anything — it was just too late.
Q. Was this the first time you saw that lowboy?
A. The first time I had saw him or even knew it was there.
Q. And then what happened?
A. I don’t know. I hit him, and that is all I remember.”
:[: * *
“Q Where were you with relation to the bridge? —
A. Well, I was across the bridge and I still had my lights on dim for this car.
Q. Wait until I finish my question: —Where were you *216 with relation to the bridge when this other car went by you so that you could turn your lights back up?
A. I was across the bridge ready to start up.
Q. Just across the bridge?
A. Ready to start up on that grade.
Q. Is it your answer that you had just crossed the bridge and were ready to start up the grade —
A. As near as I can remember.
Q. — when the other car went by?
A. Yes, went by right in that low place.
Q. In other words, referring to the elevation, you were right about in here starting up the grade when this other car passed you?
A. Where is the bridge, right here?
Q. Yes.
A. All right. Right this side, kind of a level place, I passed that car, right in there.
Q. And that is when you were able to flick your lights back on high beam?
A. After he passed I flicked them, and it was already too late.”
The “low place” and the “kind of a level place” were at the location of the bridge.
A qualified engineer testified that he conducted experiments at night with a vehicle approaching the collision point from the same direction as did Rea; and that a white sandstone rock twelve inches square located near the point of impact was visible at a distance of 225 feet in the illumination made by the headlights when on low beam. Obviously, on high beam the lowboy would have been visible from a much greater distance. As previously mentioned, it was approximately 500 feet from the bridge to the point of collision and, immediately after crossing the bridge, Rea placed his headlights on high beam. He made no contention that the lights of the oncoming car blinded him.
Viewing the testimony in the light most favorable to the plaintiffs, we cannot escape the conclusion that *217 Rea was not keeping a proper lookout. If lie had been, he would have seen the lowboy in sufficient time to have applied his brakes or to have acted conformably to avoid the collision. Under the rules announced in Union Pacific Railroad Co. v. Cogburn, 136 Colo. 184, 315 P.2d 209, and Aaron v. Wesebaum, 114 Colo. 61, 162 P.2d 232, the trial court should have found that Rea was contributorily negligent as a matter of law and directed a verdict against him.
The trial court ruled that any negligence on Rea’s part was imputable to the plaintiff McKee and no error has been assigned to this ruling. Accordingly, we accept it.
The judgment is reversed and the cause remanded with directions to enter judgment in favor of the defendants.
Mr. Chief Justice Moore, Mr. Justice Day and Mr. Justice Hodges concur.