## C-683

**Charles Edward Ferguson v. Ruland E. Gardner; Contract T.V. Repair, Inc., a Colorado corporation; and Mary Zupancic**

(554 P.2d 293)

Decided September 13, 1976.

Branney & Griffith, Ronald K. Griffith; Criswell, Patterson & Ballantine, John A. Criswell, John N. McNamara, Jr., for petitioner.

Burnett, Horan & Hilgers, Myron H. Burnett; Grant & McCarren, William J. McCarren; Zarlengo, Mott and Zarlengo, Albert E. Zarlengo, Jr., Donald E. Cordova, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the court of appeals decision in *Ferguson v. Gardner*, 35 Colo. App. 266, 533 P.2d 938 (1975), which affirmed the trial court's order directing a verdict for defendant and dismissing plaintiff's claim for damages. We reverse.

The parties will be referred to as they appeared in the trial court. In order to consider the issues raised on appeal, the evidence must be examined in the light most favorable to the plaintiff. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967); *Nettrour v. J. C. Penney Co.*, 146 Colo. 150, 360 P.2d 964 (1961); *Hennigar v. Van Every*, 139 Colo. 144, 337 P.2d 7 (1959).

The accident occurred on the southbound Speer Boulevard viaduct early in the afternoon of Saturday, June 19, 1971, a clear, bright and sunny day. The southbound viaduct was 37 1/2 feet wide and divided into three traffic lanes. The pavement was dry, and as one approached from the north, after rounding a curve, the scene of the accident was visible for 600 feet.

Traffic was light. Four vehicles were involved. The sedan of the defendant Farley had stalled in the center lane; its hood was raised, and one of its turn signals was flashing. The plaintiff pulled in front of the disabled automobile, got out of his car and asked Farley if he could be of help. Farley responded affirmatively, whereupon the plaintiff drove his vehicle forward approximately 100 feet as a safety precaution. He raised the trunk lid and returned to attempt to start Farley's vehicle.

The third vehicle to arrive on the scene was a panel truck (the "Gardner van") driven by defendant Gardner, an employee of defendant Contract T.V. Repair, Inc., owner of the truck. It was proceeding south in the center lane. The investigating officer testified that the defendant Gardner told him, "I didn't see [either Farley's or plaintiff's] . . . cars until I was already upon them and then it was too late to stop."

When Gardner finally saw the cars, he applied his brakes, leaving 53 feet of tire skid marks before sliding into the guard rail adjacent to the left lane. This caused his car to tip over onto its side as it bounced back into the center lane, striking the rear of the Farley vehicle. The force of the impact caused the Farley vehicle to leave four feet of tire skid marks on the pavement.

The impact also caused the plaintiff, who was leaning over the radiator of the Farley vehicle, to be thrown into the right lane where he was immediately struck by the left front side of defendant Zupancic's truck. When the dust settled, the plaintiff had either been knocked or dragged to a spot under his own car.

Defendant Zupancic had been driving directly behind the Gardner van so closely that she was not able to see over, around or through the van to know what was ahead in any of the three lanes. Zupancic's testimony at trial was inconsistent with a pretrial deposition in regard to her awareness of the Gardner van prior to the time Gardner applied his brakes. When Gardner's van began to skid, Zupancic saw plaintiff's and Farley's vehicles for the first time. In order to avoid striking any of the vehicles, she steered her truck into the right lane.

Initially, defendant Zupancic stated that upon seeing the van skid she immediately applied her brakes so that she could stop and avoid hitting the van. She also testified that she tried to avoid the accident by taking the right lane, which appeared to be clear, around the other vehicles, and did not apply her brakes until after she struck plaintiff. Nevertheless, as she moved into the right lane, she struck plaintiff, who had been thrown into the path of her truck. She was unable to stop until her truck had travelled to a point beyond the plaintiff's car, over 100 feet south of the point of impact with the body of plaintiff. Zupancic testified that plaintiff did not walk into the right lane, but that his body appeared suddenly and at an angle with his left arm extended upwards.

The evidence next disclosed that the police arrived at the scene almost immediately, an ambulance was called, plaintiff was taken to Denver General Hospital for emergency treatment, and the police investigation ensued. The investigating officer testified that Gardner had the odor of alcohol on his breath. However, the officer did not feel that Gardner had consumed sufficient alcohol to require a sobriety test.

The court directed verdicts in favor of each of the defendants at the close of the plaintiff's evidence. The directed verdict for defendants Contract T.V. Repair, Inc. and Gardner were grounded primarily on their defense of assumption of risk; the directed verdict in favor of Zupancic was based on the premise that the plaintiff had failed to establish any negligence on her part which contributed to plaintiff's injuries.

### Assumption of Risk

■ The general rule is that a person assumes the risk of injury or damage resulting from the negligence of another if he voluntarily and unreasonably exposes himself to injury or damages with knowledge and appreciation of the danger and risk involved. *Brown v. Spain*, 171 Colo. 205, 466 P.2d 462 (1970); *Summit County Dev. Corp. v. Bagnoli*, 166 Colo. 27, 441 P.2d 658 (1968).

■ In this state, the issues of negligence and proximate cause are generally to be resolved by the trier of fact. It is only in the clearest of cases, where the facts are undisputed and reasonable minds could draw but one inference, that the question of what constitutes reasonable care is one of law to be decided by the court and taken from the jury. *Hilyer v. MacDonald*, 169 Colo. 230, 454 P.2d 928 (1969); *Bates v. Stagg*, 157 Colo. 456, 404 P.2d 530 (1965); *Elliott v. Hill*, 148 Colo. 553, 366 P.2d 663 (1961).

■ The same principle of law must be applied in testing whether the court should invoke the defense of assumption of risk and direct a verdict for the defendant. Assumption of risk, like contributory negligence, is a fact question which a litigant is entitled to have determined by the trier of fact. This is true even in situations where there is little or no conflict in the evidence, if reasonable minds might draw different conclusions from the undisputed testimony. *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973).

Reasonable minds might well have disagreed on the inferences to be drawn from Gardner's apparent lack of control of his vehicle on a bright, clear day with 600 feet of visibility and very light traffic.

A jury might have concluded that, under the circumstances, a reasonably careful driver should have been able to change lanes and pass the disabled Farley vehicle either on the left or right side without skidding 53 feet into the railing and thence back into the middle lane striking it.

■ Gardner stated, "I didn't see the cars until I was already upon them and then it was too late to stop." This court has consistently held

that it is negligence for a person to look and not see what is plainly visible. *Sellner v. McKee*, 167 Colo. 213, 446 P.2d 909 (1968); *Union Pacific Ry. Co. v. Cogburn*, 136 Colo. 184, 315 P.2d 209 (1957). Given the circumstances of this case a reasonable person could have concluded from Gardner's admission that he was negligent.

■ What we have noted relates primarily to the negligence of the defendant Gardner. The other factor in the equation before the court is whether the plaintiff assumed the risk, as a matter of law. To assume the risk one must voluntarily and *unreasonably* expose himself to the danger with knowledge and appreciation of the risk involved.

■ The plaintiff acknowledged that he was aware of some risk. He manifested this by his precaution in parking his car 100 feet in front of the Farley car. By taking some risk he does not assume that others using the streets will throw caution to the wind. He has the right to depend on others who use the streets to see what is plainly visible and act with due regard for the situation. *Clark v. Bunnell*, 172 Colo. 32, 470 P.2d 42 (1970); *Prentiss v. Johnston*, 119 Colo. 370, 203 P.2d 733 (1949).

■ We therefore conclude that where the plaintiff voluntarily exposes himself to a known danger, he does not necessarily consent to the negligence of another. In most cases it will be a question to be resolved by the trier of fact, rather than one to be resolved as a matter of law.

In the case of Gardner the issue is clear. It is less clear in the case of Mrs. Zupancic. However, as we view the facts the question of her negligence should likewise have been submitted to the jury under proper instructions.

A brief recapitulation of the facts shows that there was doubt whether Zupancic was even aware of the Farley vehicle until she noticed it start to skid. Yet she was following it so closely that she could not see what was ahead. She stated that she could not see over, through or around the van. Her testimony as to when she applied the brakes of her vehicle is conflicting. It appears that when the van skidded Zupancic was either unable to stop or she elected not to. It was during the brief interval when the van skidded into the left lane that she first saw the Farley car. Reasonable minds could well draw different inferences from the known facts.

Whether the inferences raised by these facts were sufficiently strong to constitute negligence on her part were proper questions for the jury.

The discussion of the defense of assumption of risk in reference to the defendant Gardner is applicable to the defendant Zupancic.

The judgment of the court is appeals is reversed with directions to remand to the district court for a new trial.

MR. JUSTICE ERICKSON concurs in the result.