**Gloria A. BEESON, Plaintiff-Appellant,**

v.

**KELRAN CONSTRUCTORS, INC., a Colorado Corporation, and Wayne Lee Deal, Defendants-Appellees.**

No. 78–809.

Colorado Court of Appeals, Div. I.

Dec. 28, 1979.

Rehearing Denied Jan. 24, 1980.

Certiorari Denied March 24, 1980.

John H. Williamson, Lakewood, for plaintiff-appellant.

Littell, Everstine & Dickinson, Gilbert A. Dickinson, Richard L. Everstine, Denver, for defendant-appellee Kelran Constructors, Inc.

Burnett, Horan & Hilgers, Myron H. Burnett, Denver, for defendant-appellee Wayne Lee Deal.

SILVERSTEIN, Judge.

Plaintiff, Mrs. Beeson, brought this action to recover damages for the death of her husband which resulted from his being hit by a car driven by defendant, Wayne Deal, who was an employee of defendant Kelran Constructors. The trial court granted summary judgment in favor of Kelran, and, following a trial to a jury, entered a directed verdict and judgment in favor of Deal at the close of plaintiff's case. Plaintiff appeals both judgments. We affirm as to Kelran and reverse as to Deal.

The following facts are undisputed. Harold Biddle was the supervisor of a crew consisting of the decedent, defendant Deal, and two others, who were employed by Kelran to install a pipeline near Keystone, Colorado. Kelran's headquarters are in Lakewood, Colorado. All five of the men resided in Denver. However, one of the men camped near the project, and the other four commuted to and from Denver daily. Deal drove his own small pickup truck, paying for his own gasoline and other car expenses. Biddle drove a Kelran owned truck, taking Beeson and the other man as passengers.

On July 22, 1976, the crew worked their regular 8:00 a. m. to 4:30 p. m. shift. At quitting time a nearby property owner, for

whom they had done a favor, gave the crew a case of beer, which they consumed. They then went to a nearby tavern and between them drank three or four pitchers of beer.

At approximately 8:15 p. m., the four commuters started back to Denver over Loveland Pass. Biddle was driving the Kelran pickup with Beeson and another crew member as passengers. Deal drove alone in his vehicle. The Kelran pickup arrived at the top of Loveland Pass before Deal. When they were approaching the summit, the three men decided to "moon" Deal. Biddle parked the pickup to the side of the road, and the three men got out of the truck and ran into the highway at the top of the pass, where they pulled down their pants and bent over, exposing their buttocks. A short time later, Deal's pickup truck struck and killed Beeson. The accident occurred at 8:30 p. m., which was just at sunset.

## THE CLAIM AGAINST KELRAN

Plaintiff asserts that Kelran is liable under the doctrine of *respondeat superior*, on the ground that Deal and Biddle were acting within the scope of their employment while driving to and from the job site. We disagree.

■ The general rule, applicable to Deal, is that " 'an employee traveling from his place at work to his home or other personal destination, after completing his day's work, cannot ordinarily be regarded as acting in the scope of his employment so as to charge the employer for the employee's negligence in the operation of the latter's own car.' " *Balise v. Underwood,* 71 Wash.2d 331, 428 P.2d 573 (1967); see *Comstock v. Bivens,* 78 Colo. 107, 239 P. 869 (1925); Annot., 52 A.L.R.2d 287 (1953). However, the rule has many exceptions. *Balise, supra.*

■ Plaintiff contends that an exception exists here because the employees were paid a premium of 75 cents an hour for working at a remote site. While the payment to the employee of traveling expenses to and from work by the employer may raise an infer-

ence that, while so traveling, the employee is within the scope of employment, see *Eby Construction Co. v. Industrial Commission,* 151 Colo. 320, 377 P.2d 745 (1962), the facts of this case do not warrant such an inference.

Here the evidence is uncontradicted that the premium of 75 cents per hour was paid pursuant to a collective bargaining agreement, and that it was paid to all employees whether they lived at the site or commuted, and whether the commuters provided their own transportation, or traveled in a company truck. Deal had terminated his employment for the day at 4:30 p. m., and from that time on was performing no service for his employer. Thus, at the time of the accident he was outside the scope of his employment. *See Heide v. T.C.I., Inc.,* 264 Or. 535, 506 P.2d 486 (1973).

■ With respect to Biddle, the trial court ruled that Biddle was in the scope of his employment when returning to the Denver area in the company truck but that, from the time Biddle stopped the truck and got out, he left the scope of his employment. Biddle's participation in the horseplay on the highway clearly was outside the scope of his employment. In order to hold the employer liable, it must be shown that the superior employee had authority, either express or implied from the nature of his functions and the regular course of business, to do the act or give the order alleged to be negligent. *Novelty Theater Co. v. Whitcomb,* 47 Colo. 110, 106 P. 1012 (1910). No such authority was present in this case.

Further, the evidence is uncontradicted that the suggestion for the "mooning" came from one of the passengers, and not from Biddle. Plaintiff admits, and even asserts, that the decedent was "obviously on a personal frolic" when he left the company truck. Biddle was likewise on a personal frolic at the time of the accident. Thus, the trial court properly dismissed the claim against Kelran. *Novelty Theater Co., supra.*

## THE CLAIM AGAINST DEAL

At the close of plaintiff's case, the trial court ruled that, as a matter of law, there was "insufficient evidence for any reasonable fact finder to conclude that the defendant driver was chargeable with negligence greater than that" of the decedent.

■ The issue should have been submitted to the jury. It is only in the clearest of cases that the issues of percentage of negligence and proximate cause are to be taken from the jury. *Ferguson v. Gardner*, 191 Colo. 527, 554 P.2d 293 (1976). And, notwithstanding the conduct of decedent, one who voluntarily exposes himself to a known danger does not necessarily consent to the negligence of another. *Ferguson, supra.*

Reviewing the evidence in the light most favorable to plaintiff, *Transamerica Ins. Co. v. Pueblo Gas & Fuel Co.*, 33 Colo.App. 92, 519 P.2d 1201 (1973), we note the following facts in the record.

The officer who investigated the accident testified that it was dusk when the accident occurred and that though visibility was, therefore, poor, a reasonably prudent driver could have seen the three men 300 feet from the point of impact. He further testified that Deal told him his attention was diverted by looking at the company truck, and that he did not see the men until he was about 50 feet from them. Skid marks at the scene and photographs admitted into evidence conformed to this testimony.

The speed limit was 30 miles per hour, and although Deal was driving 35 miles per hour, the officer testified that this was not an unreasonable speed. He also testified that he determined Deal was not intoxicated at the time of the accident, nor was his driving ability impaired.

■ Under these facts, we hold that a jury question existed as to whether Deal's conduct, including his failure to see the men as soon as the terrain permitted, *see Sellner v. McKee*, 167 Colo. 213, 446 P.2d 909 (1968), constituted a greater degree of negligence than that of Beeson. Reasonable minds might draw different conclusions from the undisputed testimony. *Ferguson v. Gardner, supra; Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973).

## RULINGS ON EVIDENCE

■ Plaintiff asserts evidence tendered to prove decedent had received income from the Hoopa Indian tribe should have been admitted. We disagree. The limited record supplied on this point shows that no proper foundation was presented to warrant admitting the evidence that was offered.

■ Likewise, plaintiff's offer to introduce the union contract with Kelran was properly denied. Since the pertinent terms had already been testified to, the contract itself was merely cumulative.

The judgment in favor of Kelran is affirmed. The judgment in favor of Deal is reversed; and the cause is remanded for a new trial.

COYTE and KELLY, JJ., concur.